**UNITED STATES of America,
Plaintiff,**

v.

**Albert N. DUKOW et al., Defendants.
Crim. No. 68–058.**

United States District Court,
W. D. Pennsylvania.

Aug. 2, 1971.

David B. Buerger, of Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for defendant Albert N. Dukow.

Richard L. Thornburgh, U. S. Atty., by Charles F. Scarlatta, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

## OPINION AND ORDER

MARSH, Chief Judge.

The defendant, Albert N. Dukow, and three codefendants were charged on March 7, 1968, in an indictment with four counts of violating 15 U.S.C. § 77q(a), securities fraud; four counts of violating 18 U.S.C. § 1341, mail fraud; 18 U.S.C. § 2(a), aiding and abetting; and one count of violating 18 U.S.C. § 371, conspiracy to commit the substantive offenses of securities fraud, mail fraud and wire fraud (18 U.S.C. § 1343). His codefendants were Thomas S. Crow and Saul Brourman, the executive officers of Crow, Brourman and Chatkin (CBC), an over the counter brokerage firm, and William J. Abbott, the sales manager of that firm.

After a protracted trial, the jury acquitted Abbott of all counts; acquitted the other defendants of conspiracy; found Dukow guilty of the eight fraud counts; and found Crow and Brourman guilty of Counts 3 and 4 (securities fraud),[1] and not guilty as to the other fraud counts.

Dukow has moved for judgment of acquittal and, in the alternative, for a new trial.[2]

It is the opinion of the court that both motions should be denied.

The accusations stemmed from certain sales made by CBC over the counter of common stock of Champion Industries, Inc. At the trial it was proved that during 1962, Dukow acquired Champion Industries, Inc. (Champion), which was essentially a paper corporation with no substantial assets. In July, 1962, Champion purchased the Forsberg Manufacturing Company (Forsberg) for a price of $500,000; the down payment was $100,000 raised by a mortgage on Forsberg's equipment, admittedly a bootstrap operation, and promissory notes given for the remainder. The Forsberg stock was placed in escrow to secure payment. Default was declared by Forsberg in Oc-

tober, 1962; breach of warranties by Forsberg was claimed by Dukow for Champion; renegotiation of the purchase price was proposed and considered but was not consummated, and Forsberg repossessed the plant on February 19, 1963.

Dukow was the principal link between Champion and CBC; he met with Abbott and Crow in October, 1962; he addressed CBC's salesmen in Pittsburgh on January 24, 1963 upon the merits and prospects of Champion; and he presented to them a brochure. Undoubtedly, he was then aware of Champion's poor financial status, nebulous prospects for acquiring subsidiaries, the problems at the Forsberg plant, including the breach of warranties, and the lurking danger of its being repossessed for non-payment, none of which did he reveal to the CBC salesmen. Subsequently, he sent reports and statements about Champion's financial condition, and engaged in telephone communications with the officers of CBC. Dukow was CBC's principal source of information concerning Champion, its stock and Forsberg.

There was evidence direct and circumstantial from which reasonable inferences could be drawn that Dukow engaged with the officers and employees of CBC in a scheme or artifice to defraud investors by the sale of Champion stock and the use of the mails in furtherance thereof; and that this scheme began in 1962 and continued until at least the end of March, 1963. Dukow was the major stockholder and became president of Champion and remained such until April, 1963. CBC participated in making the market for Champion stock, beginning to retail it in January, 1963, and continuing to sell it after March 7, 1963.

After learning that Forsberg was repossessed on February 19, 1963, CBC suspended all sales of Champion stock, but upon subsequent investigation and consultations with Dukow commenced

---

1. Crow and Brourman have appealed their convictions.

2. Neither side ordered a transcript of the trial.

selling it again on March 15, 1963. Crow and Brourman testified that the sales of Champion stock on and after March 15th were resumed only after they had been assured by Dukow that he had arranged for the reacquisition of Forsberg. The reacquisition never came to pass. The adverse facts were not revealed to investors.

Dukow did not make any stock sales personally. All were made by the brokerage personnel of CBC.

There was proof that the mails were used by CBC in sending confirmation of sales of Champion stock to purchasers on March 15, 1963, on May 2, 1963, and sending a stock certificate in June, 1963, in furtherance of the scheme to defraud.

*Motion for Judgment of Acquittal*

The reasons stated in support of this motion are:

"1. There was no evidence of illegal acts within the period not barred by the statute of limitations.

"2. As to Counts 2 and 5 to 9, the verdict was inconsistent with the finding of not guilty for codefendants.

"3. As to Counts 5 and 9, there was no evidence to warrant submitting the case to the jury.

"4. As to all counts, there was insufficient evidence to warrant submitting the case to the jury."

■ In our opinion there was sufficient evidence to warrant a finding by the jury of a scheme or artifice to defraud investors in the sale of Champion stock, which finding established not only violations of the Securities Act (Counts 2 through 5) but also the Mail Fraud Act (Counts 6 through 9). We are also of the opinion that there was evidence, direct and circumstantial, of acts or omissions in furtherance of the scheme on the part of Dukow within the statutory period, i. e., after March 7, 1963. Schemes to defraud may be sustained on circumstantial evidence standing alone; "a common purpose and plan may be inferred from a 'development and a collo-

cation of circumstances.'" Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680; United States v. Migliorino, 238 F.2d 7 (3d Cir. 1956); United States v. Georga, 210 F.2d 45, 48 (3d Cir. 1954).

■ Even without proof of acts on the part of Dukow within the statutory period, he could still be properly convicted and thus is not entitled to judgment of acquittal. Dukow was charged and proved to have engaged in a scheme or artifice to defraud. The scheme was a continuous one. As a participant in a continuing scheme to defraud, he is bound by the acts of his co-schemers so long as the scheme remains in existence. There is no doubt that the scheme remained in existence and Champion stock was sold after March 7, 1963 and into April and May, 1963.

In Pinkerton v. United States, 328 U. S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489, it was stated:

"A scheme to use the mails to defraud, which is joined in by more than one person, is a conspiracy."

*Pinkerton* cites Blue v. United States, 138 F.2d 351, 358 (6th Cir. 1943), where it was stated:

"When a scheme to defraud is shared in by two or more, it becomes a conspiracy; the rules of evidence are the same as where a conspiracy is charged (Robinson v. United States, 9 Cir., 33 F.2d 238); and the act of each party in furthering the common scheme is the act of all. Davis v. United States, 5 Cir., 12 F.2d 253. If one's intent is to defraud when he joins a dishonest scheme, he becomes a part of the scheme, although he may know nothing but his own share in the aggregate wrongdoing. Silkworth v. United States, 2 Cir., 10 F.2d 711. Formal agreement is not necessary, it being sufficient if there is an association in the purpose to defraud."

At page 359:

"Where a fraudulent scheme is entered into by several parties, and there is evidence from which the jury

can properly infer that the use of the mails by one of the defendants was in furtherance of the fraudulent scheme, and that the scheme was in existence prior to the mailing of the letter, the mailing is, in law, *the act of all the defendants."* (Emphasis supplied.)

■ Dukow emphasizes that there was no evidence that he participated in the specific sales of Champion stock. The fact that he may not have been a party to the sales which were made by the CBC personnel pursuant to the scheme does not exonerate him from the charges of securities fraud and mail fraud. If Dukow with criminal intent to defraud joined the scheme and thus became a part of it, as the verdicts establish, he is guilty although he may have known nothing "but his own share in the aggregate wrongdoing."

■ When two or more parties are found to have joined in a common scheme, all are responsible for the acts and declarations of each co-schemer in furtherance of the scheme while it is in progress, and this is so regardless of whether conspiracy is charged in the indictment. When a common scheme has been found to exist, the general rules of agency regarding joint liability are applied as a matter of evidence in determining guilt on the substantive counts. American Fur Co. v. United States, 27 U.S. 358, 365, 7 L.Ed. 450; United States v. Bernard, 287 F.2d 715, 719–721 (7th Cir. 1961); United States v. Olweiss, 138 F.2d 798, 799–800 (2d Cir. 943); Coplin v. United States, 88 F.2d 652, 660–661 (9th Cir. 1937); 22A C. J.S. Criminal Law § 756b, pp. 1127–1128.

■■ The fact that the jury acquitted all the defendants on the conspiracy count and found Crow and Brourman not guilty of six fraud counts does not vitiate the verdicts finding Dukow guilty of all eight substantive fraud counts. It is well established that verdicts of a jury in a criminal case need not be consistent. In United States v. Herr, 338 F.2d 607 (7th Cir. 1964);

Burns v. United States, 286 F.2d 152 (10th Cir. 1961); and Coplin v. United States, *supra,* it was held that acquittal of a defendant on a count charging conspiracy to commit a violation of the Securities Act does not affect the validity of convictions of the substantive Securities Act counts. *Cf.* Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356; United States v. American Stevedores, Inc., 310 F.2d 47 (2d Cir. 1962); United States v. Cindrich, 241 F.2d 54 (3d Cir. 1957).

Dukow relies on Blue v. United States, *supra,* for the proposition that if his active participation in the scheme was not within the five-year period of limitations, a conviction *as an aider and abetter is barred.* But in *Blue* certain appellants had ended their association with the scheme long before the mails were used in furtherance thereof, which is not the situation in the case at hand. And it is to be noted that *Blue* sustains the principle relied on by the prosecution here, viz., that a participant who had not ended his association with the scheme to defraud may be convicted by acts of his co-schemers within the period of limitations. There was sufficient affirmative evidence that Dukow had not disconnected himself with the scheme in a manner reasonably calculated to reach Crow or Brourman or the other co-schemers after March 7, 1963, even if no acts on his part were proved after that date.

The verdicts of the jury established upon sufficient evidence that the partnership in securities fraud between Crow, Brourman and Dukow continued as to Counts 3 and 4 after March 7, 1963, and that Dukow was properly convicted of the substantive fraud counts.

*Motion for New Trial*

■ The reason assigned in support of this motion is:

" * * * [T]he Court refused to state to the jury defendant's contention that he was not guilty and instead stated to the jury that defend-

ant contended that he was not guilty beyond a reasonable doubt."

The defendant made this request after lengthy instructions had been given. It was refused because the jury had been told by court and counsel that all the defendants contended that they were not guilty. Consideration of the instructions as a whole certainly conveyed to the jury Dukow's theory and contention that he was not guilty.

Shortly after the jury was sworn, the court repeated the crimes for which the defendants had been indicted and then told the jury that they *"pled not guilty and they are presumed to be innocent until they are proven guilty by evidence presented by the prosecution which convinces you of their guilt beyond a reasonable doubt."* (Emphasis supplied.)

During the charge it was stated again that a defendant is to be regarded by the jury as innocent unless he is proved guilty beyond a reasonable doubt. Also, the jury was told:

"If a defendant did not have a criminal intent, he is not guilty of the crime charged. If any defendant's acts were done inadvertently, mistakenly, or in good faith without an intention to defraud, then the prosecution has not sustained its burden of proof and that defendant must be acquitted of the charges of conspiracy, securities fraud, and mail fraud, or aiding or abetting same. * * *"

"* * *

"Each defendant wants you to believe that he did not enter into a scheme to defraud persons by misrepresenting material facts concerning the financial condition of Champion Industries and Forsberg Manufacturing Company, or by omitting to state material facts concerning those companies.

"Each defendant wants you to believe that he did not enter into a scheme to defraud persons or to obtain money by means of misrepresentation or omission.

"Each defendant wants you to believe he did not engage in business practices to defraud and deceive purchasers of Champion stock.

"Each defendant wants you to believe that he did not in any manner aid and abet another person or persons in violating the Securities Act and the Mail Fraud Statute.

"Each defendant wants you to believe he acted in every respect in good faith.

"Each defendant wants you to find him not guilty."

We think the jury was told and fully understood the theory of the defendant Dukow, i. e., "that he was not guilty— period."

Counsel's arguments for acquittal from Dukow's point of view were and are expertly devised and most persuasive. However, the jury completely disagreed, more so than as to three of his codefendants. Because we think there was sufficient evidence from which the jury could reasonably find that Dukow was a part of the scheme or artifice to defraud, it is not for this court to say that the jury was in error.

An appropriate order will be made denying the motion for judgment of acquittal and, in the alternative, for a new trial.