**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert K. STITT \*, Defendant.**
**Crim. A. No. 74–130.**

United States District Court,
W. D. Pennsylvania.

Sept. 5, 1974.

James A. Villanova, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

Harold Gondelman, Pittsburgh, Pa., for defendant Robert K. Stitt.

---

\* Co-defendants Dale M. Carter, Richard M. Ranalla, Rosemary D'Ercole plead guilty to the charges in this case. Co-defendant Thomas Bookmeyer was acquitted of all counts by the verdict of the jury.

MARSH, Chief Judge.

## OPINION AND ORDER

After conviction by a jury, the defendant, Robert K. Stitt, filed a "Motion in Arrest of Judgment, or in the Alternative, for New Trial". No grounds appear in the motion to authorize arrest of judgment under Rule 34 F.R.Crim.P., therefore, that motion will be denied. The alternative motion for a new trial will also be denied.

The defendant's first three reasons for a new trial have no merit. The verdict was not against the weight of the evidence, the credible evidence, or the applicable law.

We briefly summarize the facts in the light most favorable to the verdict winner. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Dukow, 465 F.2d 688 (3rd Cir. 1972).

For over a year Mr. Stitt had been associated with Dale M. Carter and Richard M. Ranalla as their counsel. They were in his office almost daily. Their activities were questionable and ultimately they pleaded guilty to two crimes of a fraudulent nature. During this association, Mr. Stitt advised them how to obtain money (property damages and exaggerated medical expenses) by staging a "perfect accident", i. e., a rear-end collision at a red light. To allay Carter's fear of being caught, Stitt stated that he had previously accomplished this. In early November, 1972, Stitt brought up the fact that Carter and Ranalla "had accumulated a considerable amount of legal fees" in connection with the formation of a corporation called Baby Memories, Incorporated and other business matters. Carter and Ranalla explained that the business was not doing well. (Tr. pp. 54–55). Also in early November, Carter by his own testimony related that he had decided he would "definitely have to get rid of [his] car." (Tr. p. 47). Stitt suggested that a staged rear-end collision would serve to clear up both matters, i. e., the legal fees owed to him and the desire of Carter to get rid

of his car, since Stitt's end of the accident claim would be enough to cover the legal fees. (Tr. p. 55).

Within a week, Carter and Ranalla obtained the cooperation of their employee, Rosemary D'Ercole. According to the plans she was to run her car into the rear of Carter's car, a 1970 Lincoln Continental. The plan was finalized in Stitt's office on the day before the "accident". On advice of Stitt, Carter had previously obtained automobile insurance from Nationwide Insurance Company under the name of Martin D. Carter, because as Dale M. Carter he had a poor driving record and was unlikely to obtain automobile insurance.

After the fake collision Stitt told Carter and Ranalla to go to Shadyside Hospital, obtain medical services from Dr. Kann and request him to prescribe therapy to be administered by Frank Matrozza, a physical therapist. Subsequently, according to Stitt's instructions, Matrozza submitted padded bills for unperformed therapy treatment to Carter and Ranalla. Nationwide paid $920.87 for damage to Carter's Lincoln which according to the plan was to be destroyed after a period of time. Shortly after the accident Nationwide advised that it would cancel the Carter policy. Thereupon, Stitt told Carter to give him $200 and he would have the Lincoln stolen and promptly destroyed and thus enable Carter to claim the value of a "repaired" stolen vehicle before the expiration date. Instead of destroying the car, Stitt's henchman partially burned it. After negotiations with Stitt, Nationwide paid $1,918.95 to satisfy a G.M.A. C. lien on the Lincoln and the remainder of $792.55 to Carter. Stitt settled the personal injury claims of Carter and Ranalla against D'Ercole with State Farm Insurance Company, D'Ercole's insurer, for $3,500 after expenses. Each received $959 and Stitt received $960. D'Ercole received $655 from State Farm for damage to her car and gave $400 to Carter and Ranalla. The planned destruction of D'Ercole's automobile was abortive. Altogether the

**1174**

two insurance companies were mulcted out of approximately $7,750 as the consequence of the staged collision. The jury found that the mails were used on 8 occasions in perpetration of the fraud.

There was ample evidence, if believed, to support the jury's verdict that the defendant Stitt was guilty of the charged accusations of conspiracy and mail fraud beyond a reasonable doubt. "Evaluating the credibility of witnesses is for the jury * * *." United States v. Brown, 471 F.2d 297, 298 (3rd Cir. 1972); United States v. Dukow, *supra.*

■ Since the jury had acquitted the defendant Bookmeyer, Stitt in his brief argues that the verdicts are inconsistent under the evidence presented. However, it is well established that verdicts of a jury in a criminal case need not be consistent. Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932); Cf. United States v. American Stevedores, Inc., 310 F.2d 47 (2d Cir. 1962); Bridgman v. United States, 183 F.2d 750, 753 (9th Cir. 1950) mail fraud; Whealton v. United States, 113 F.2d 710, 717 (3rd Cir. 1942) mail fraud; United States v. Dukow, 330 F. Supp. 360, aff'd on other grounds, 465 F.2d 688 (3rd Cir. 1972).

The defendant's 4th reason for a new trial asserts that "[t]he court committed error in sending the indictment out with the jury when the indictment was not evidence * * *."

The 16-page indictment contained 10 counts. The conspiracy count consisted of 5 pages and specified 8 parts of the conspiracy and 9 overt acts. It seems logical that the jury should have access to the indictment so that its members could, if desired, discuss and test the proofs with the alleged means of perpetrating the conspiracy, and to determine whether one of the alleged overt acts had been established by the evidence, as well as find if one or more of the 9 substantive counts of mail fraud had been proved. The jury did find the defendant Stitt not guilty of substantive count 10, and found Bookmeyer not guilty of

all counts. Without the indictment as a guide, it would be most difficult for any fact-finder, judge or jury, to accurately and intelligently pass upon each count and each overt act in the light of the evidence.

After the prospective jurors were sworn they were instructed as follows:

"Now, the indictment returned by the Grand Jury is a formal document which the Government uses to commence its charge against the defendants and upon which it brings its case into court and the indictment serves no other trial purpose whatsoever. The sole purpose of an indictment is to serve as an accusation or charge which the United States makes against the defendants. It serves to inform the defendants of the crime with which they are charged. The indictment is not evidence against the accused and affords no inference of guilt.

The Government has the burden of proof to establish guilt of each defendant here being tried beyond a reasonable doubt. Until that happens, if ever, each defendant is presumed to be innocent." (Tr. p. 14–A)

The counsel for the prosecution and counsel for the defendant Stitt, in their opening addresses to the jury, emphasized that the indictment was not evidence. (Tr. pp. 19, 35).

During the charge the jury was instructed as follows:

"As I heretofore told you when you were being selected as jurors the indictment returned by the grand jury contains the charges or accusations against each defendant. Each count in the indictment is an accusation. The indictment is not evidence and should not be considered by you as any evidence of the guilt of Stitt or Mr. Bookmeyer. You will have copies of the indictment available to you in the jury room to aid you in passing upon the guilt or innocence of these two defendants as to each count in an orderly manner. You are to consider

the evidence in the light of the instructions I am now giving you. As you consider the evidence it is important to bear in mind that the law presumes a defendant to be not guilty of the offense with which he stands charged. This presumption of innocence remains with him throughout the trial through all of its phases and should cause you, the jury, to find him not guilty unless it is removed by evidence presented to you by the prosecution which establishes a defendant's guilt of the charges contained in the indictment beyond a reasonable doubt. The presumption of innocence alone must result in the acquittal of a defendant unless you are convinced from all the evidence in the case of his guilt beyond a reasonable doubt." (Tr. pp. 887–888).

■ Allowing the jurors to have the indictment with them during their deliberations is within the discretion of the trial court "subject to a limiting instruction that the indictment does not constitute evidence, but is an accusation only." United States v. Todaro, 448 F. 2d 64, 66 (3rd Cir. 1971). The limiting instructions were adequate, and the 4th reason for a new trial is without merit.

In his 5th reason the defendant asserts error in the charge when it referred to the witness, Matrozza, as "perhaps" an accomplice. The pertinent instruction was as follows:

"Prior convictions of crimes of dishonesty, such as burglary and fraud and transporting forged checks as well as admitting on the witness stand as did Mr. Matrozza that he has made a practice of sending padded bills to attorneys to defraud insurance companies out of money gives you some indication of the type of person a witness is from the standpoint of truthfulness or whether he or she is a person of credit.

It is not conclusive that a person with a previous criminal record or a self-confessed falsifier lacks credibility. Such persons may be just as truthful under oath as other persons.

It is for you to carefully weigh and consider the testimony of Carter, Ranalla, D'Ercole and Matrozza. It is for you to say what credibility and weight should be given to the testimony of those witnesses in the light of all the evidence in the case.

Furthermore, since Carter, Ranalla and D'Ercole testified to their guilt of conspiracy and mail fraud and implicated Stitt and to some extent Bookmeyer in the same crimes they are known in the law as accomplices.

The testimony of an accomplice in a crime or in crimes is to be received by you with caution and you should not accept it unless the testimony concurs agreeably with the other facts and circumstances in evidence so as to leave in your mind no reasonable doubt that their testimony is true.

The testimony of admitted conspirators and defrauders such as Carter, Ranalla and D'Ercole and perhaps Matrozza must be scrutinized and weighed with great care since it proceeds from a corrupt source. The testimony of an accomplice is not of a very high type because to some extent it is impeached by his participation in the crime. The testimony of an accomplice who provides evidence for personal advantage such as mitigation or diminution of punishment must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the accomplice's testimony has been affected by personal self-interest or by hostility and prejudice against Mr. Stitt. Thus, you should consider the testimony of the accomplices, Carter, Ranalla and D'Ercole, and perhaps Matrozza, in the light of all the testimony in the case and give to it such weight as you find it deserves and merits." (Tr. pp. 892–894).

■ Mr. Matrozza was not named in the indictment as a conspirator. Although he knew from prior dealings with Mr. Stitt that his padded bills for physical therapy were to be used to de-

fraud an insurance company, he knew nothing of the conspiracy to stage the fake accident in this case. It is doubtful that he was a member of the conspiracy to stage a fake accident to defraud by use of the mails. Since it is not required that the charge specify which witnesses should be considered accomplices, United States v. Barone, 467 F.2d 247, 250 (2d Cir. 1972), we think the use of the words "perhaps Matrozza", if error, at the worst was harmless. See also United States v. Harrelson, 477 F.2d 383, 385–386 (5th Cir. 1973).

We do not think the 5th reason justifies granting a new trial.

In his 6th and 7th reasons the defendant asserts error in failing to sever the case of the defendant Stitt from that of defendant Bookmeyer "when the statement of Bookmeyer was entered into evidence through the witness Nickles (sic)." [1]

"When Bookmeyer failed to take the stand in his own defense, counsel for this defendant (Stitt), moved for a severance so that he could call Bookmeyer as a witness in Stitt's defense, which motion was refused by the Court." [2]

Rule 14 F.R.Crim.P. provides in pertinent part, that:

"If it appears that a defendant * * * is prejudiced by a joinder of * * * defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

 The disposition of Rule 14 matters is normally within the discretion of the court. The defendant states in his motion:

"In light of Bookmeyer's acquittal by the jury, his testimony for and on behalf of the defendant Stitt would have helped in contradicting the testimony of other government witness-

es, but his position as a co-defendant invoking his Fifth Amendment privilege and not taking the stand precluded his availability as a witness to the defendant Stitt."

 "The constitutional right of a defendant not to testify at the behest of a co-defendant remains his right despite the severance of their trials." United States v. Somers, 496 F.2d 723, 731 (3rd Cir. 1974), citing United States v. Barber, 442 F.2d 517, 529 (3rd Cir. 1971) n. 22. Stitt has made no showing that Bookmeyer would have testified voluntarily in Stitt's case had the trials been severed. Absent such a demonstration, Stitt has neither proven the prejudice which is the basis of a Rule 14 motion nor the abuse of discretion which would require a new trial. "The unsupported possibility that a co-defendant would testify in a severed case does not render the refusal to sever erroneous." United States v. Kahn, 381 F.2d 824, 841 (7th Cir. 1967), cited in *Somers, supra,* 496 F.2d at 731.

In our opinion the asserted error in failing to sever is without merit.

An appropriate order will be entered.

---

1. In the record the name of the witness is Romel Nicholas.

2. See defendant's Motion, reason number 6; See also Tr. pp. 798–799.