**UNITED STATES of America**

v.

**Charles F. G. SMITH et al., Charles F. G. Smith, Movant.**

**Crim. No. 75–372.**

United States District Court,
E. D. Pennsylvania.

April 5, 1976.

Robert E. J. Curran, U. S. Atty., Jeffrey M. Miller, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

**1258**

Robert F. Simone, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

 Defendant Charles F. G. Smith was charged in a two-count indictment with conspiracy to smuggle Mexican gold coins into the United States and conspiracy to traffic in counterfeit obligations of the United States, both in violation of 18 U.S.C. § 371. After a jury trial, Smith was found guilty as to both counts. Presently before the Court are Smith's motions for arrest of judgment [1] or, in the alternative, for a new trial. Smith moves for a new trial on the grounds that the Court: (1) failed to instruct the jury as to his theory of the defense; (2) failed to make a fair and impartial summary of the evidence in its charge to the jury; (3) abused its discretion by permitting the jury to have possession of the indictment during deliberations; and (4) improperly permitted a rebuttal by the Government during closing arguments despite the fact that Smith did not present a defense. For the reasons set forth below, the motions will be denied.

Only a brief synopsis of the facts is necessary to understand the issues raised herein. The evidence showed that on February 12, 1975, coconspirators Gene Harrow and Mario Papini [2] met with Mitchell Berger, a Government informant, at a diner located in Philadelphia. Papini mentioned the possibility of a deal whereby approximately 4900 Mexican gold coins could be purchased from two Mexican brothers, Juan and Armando Perez. At that time, the coins were physically located in Mexico. After that meeting, Berger contacted Dale Larson, a United States Secret Service agent, informing Larson of his meeting with Papini and Harrow and of the possibility that the proposed deal might in some way be illegal. Thereafter, Smith contacted Berger to inform him that the coins were still available and to set up a meeting for February 24, 1975, at the George Washington Motor Lodge located just outside the City of Philadelphia. At that meeting, Berger introduced Agent Larson to Smith, Harrow and Papini as Dale Bittel, an interested prospective buyer of the gold coins. The plan, as developed in that meeting and two subsequent meetings held on February 28 and March 4, 1975, as well as in numerous telephone conversations, was as follows: Larson was to purchase from Juan and Armando Perez, as arranged by Smith, Harrow and Papini, approximately 6900 Mexican gold coins and $500,000 in counterfeit obligations. The coins and counterfeit money were to be shipped in a large crate marked "furniture" from Mexico, through various Caribbean or Mediterranean ports, and into the United States. This method of shipment was designed to avoid customs inspection upon arrival in this country. Delivery was to be made on March 8, 1975, at a parking lot located at the corner of Routes 1 and 320 in Springfield, Delaware County, Pennsylvania. For reasons that are not entirely clear, nor particularly crucial, the coins and counterfeit money were never delivered and the deal was never consummated.

### 1. Theory of the defense.

Smith contends that the Court should have instructed the jury as to the theory

---

[1]. A motion for arrest of judgment may *only* be raised on the grounds that (1) the indictment or information does not charge an offense; or (2) the court was without jurisdiction of the offense charged. *See* Fed.R.Crim.P. 34; 2 *Wright, Federal Practice and Procedure: Criminal* §§ 571–574 (1969). Since Smith asserts neither of these grounds, this motion will be denied. The Court notes, however, that one of Smith's arguments in support of the above motion is that there was insufficient evidence

to sustain a conviction. Such a ground is properly advanced in support of a motion for judgment of acquittal. *See* Fed.R.Crim.P. 29(c). Assuming, *arguendo*, that Smith had filed a motion for judgment of acquittal, the Court would have no hesitancy in denying that motion. There was sufficient evidence to support a guilty verdict. *See* N.T. 4–109 to 4–110.

[2]. Harrow and Papini pled guilty to the charges in this case.

of the defense. Essentially, that defense, as allegedly developed through both the direct and cross-examinations of Government witnesses, was that Papini, Harrow, Juan Perez and Armando Perez never intended to smuggle the coins and counterfeit money into the country. In other words, the entire scheme was allegedly set up, as stated in defendant's brief in support of post-trial motions, to "rip-off" the buyer, Agent Larson. If such were the case, Smith argues, even if he personally intended to carry out the plan, he could not be found guilty of *conspiracy* to smuggle the coins and counterfeit money since none of the other alleged conspirators ever intended to do the same.[3]

■ A defendant in a criminal case is entitled to have the jury instructed on any theory of defense for which there is any foundation in the evidence, however tenuous. *United States v. Hillsman,* 522 F.2d 454, 459 (7th Cir. 1975); *United States v. Grant,* 510 F.2d 137, 138–139 (5th Cir. 1975); *United States v. Blair,* 456 F.2d 514, 520 (3d Cir. 1972); *United States v. Shewfelt,* 455 F.2d 836 (9th Cir.), *cert. denied,* 406 U.S. 944, 92 S.Ct. 2042, 32 L.Ed.2d 331 (1972). The defendant need not testify or offer evidence or witnesses as a prerequisite to a court's instructing as to a theory of defense. Indeed, the foundation may rest upon evidence elicited from Government witnesses, either on direct or on cross-examination. *See United States v. Vole,* 435 F.2d 774 (7th Cir. 1970); *United States v. Phillips,* 217 F.2d 435 (7th Cir. 1955). However, such an instruction need not be given if it is completely devoid of

evidentiary support or is based upon mere speculation. *United States v. Waskow,* 519 F.2d 1345, 1347 (8th Cir. 1975); *United States v. Grant, supra,* 510 F.2d at 139; *United States v. Blair, supra,* 456 F.2d at 520.

■ After a thorough examination of the record, the Court finds no foundation in the evidence to support Smith's "rip-off" theory of defense. The Court is not unmindful of the fact that Agent Larson testified, both on direct and cross-examination, of his concern about the possibility of being "ripped-off" by the Mexicans, Juan and Armando Perez. That testimony is subject to two different interpretations. One is that the Perezes never intended to smuggle the coins or counterfeit money into the country, but merely set up the scheme in order to "rip-off" the unsuspecting buyer, Agent Larson. The other is that they intended to smuggle the coins and counterfeit money into this country, using them as bait to steal the purchase money from Larson and actually sell them to someone else. Neither interpretation lends any support to Smith's theory that Papini and Harrow never intended to smuggle the coins and counterfeit money into the country. To have given an instruction to that effect would have been tantamount to instructing the jury on a theory of defense for which there was no foundation in the evidence, and would have distracted the jury from its important deliberating function of examining only the evidence by the interjection of idle speculation and frivolous considerations. *See United States v. Blair, supra,* 456 F.2d at 520. Accordingly, the mo-

**3.** Smith's proposed supplemental point for charge reads as follows:

1. Before there can be a guilty verdict on a conspiracy charge the government must prove beyond a reasonable doubt that there were at least two participants. Since Larson and Berger were working for the government at all times material they can not be considered participants. Therefore you must be satisfied that either or both Harrow and Papini intended to smuggle gold coins or counterfeit money. If you are not satisfied that both Harrow and Papini did not *(sic)*

intend to smuggle the coins or counterfeit money you must acquit the defendant Charles Smith.
The Court specifically instructed the jury that Larson and Berger could not be considered participants in the conspiracy since their intent was not to commit a crime. N.T. 5–26. However, the Court refused to instruct as to Smith's "rip-off" theory because there was a total lack of evidence that Harrow and Papini never intended to smuggle gold coins or counterfeit money into the country. N.T. 5–48 to 5–50.

1260

tion for new trial on that ground will be denied.

## 2. *Improper summary of evidence.*

Smith contends that the Court failed to make a fair and impartial summary of the evidence in its charge to the jury. Specifically, he argues that the Court unduly highlighted the Government's evidence and ignored a great deal of evidence favorable to Smith, which was elicited on cross-examination of Government witnesses. In effect, he concludes, the Court's charge "presented the Government's final arguments."

The standard against which a charge to a jury must be measured is contained in *Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321, 1325 (1933), wherein the Supreme Court stated:

> In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination.

A trial judge's power to make comments is not boundless, however, as he or she may not unfairly prejudice a defendant. *United States v. Green,* 373 F.Supp. 149, 159 (E.D.Pa.), *aff'd mem.,* 505 F.2d 731 (3d Cir. 1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975). *See United States v. Gaines,* 450 F.2d 186, 188–192 (3d Cir. 1971), *cert. denied,* 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 801 (1972).

██ A review of the Court's charge reveals that the jury was fairly and adequately instructed. Although some comments touching upon the evidence and the Government's theory of the case were made by the Court, it was done with the requisite impartiality. The Court at all times remained well within the bounds of fair comment. More importantly, the jury was instructed that it was the sole determiner of the facts (N.T. 5–16, 5–37 to 5–38, 5–46) and of the credibility of the witnesses (N.T. 5–33 to 5–34), and that it was at liberty to disregard all comments of the Court (N.T. 5–39).

## 3. *Indictment during deliberations.*

Smith contends that the Court abused its discretion by allowing the indictment to be sent out with the jury during its deliberations because the indictment contained specific words of taped telephone conversations "thereby invading the province of the jury."[4] We reject this contention.

██ It is well settled that allowing the jurors to have the indictment during their deliberations is within the sound discretion of the trial court, *United States v. Tucker,* 526 F.2d 279, 283 (5th Cir. 1976); *United States v. Todaro,* 448 F.2d 64, 66 (3d Cir. 1971), *cert. denied,* 404 U.S. 1040, 92 S.Ct. 724, 30 L.Ed.2d 732 (1972); *United States v. Stitt,* 380 F.Supp. 1172, 1175 (W.D.Pa. 1974), *aff'd mem.,* 510 F.2d 971 (3d Cir.), *cert. denied,* 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448 (1975), "subject to a limiting instruction that the indictment does not constitute evidence, but is an accusation only." *United States v. Todaro, supra,* 448 F.2d at 66 (footnote omitted). The jury was so instructed.[5]

---

**4.** *See* Defendant's Brief in Support of Post-Trial Motions at 7.

**5.** *See* N.T. 5–43, 5–55, 5–56. The Court specifically gave the jury the following instruction:

> Firstly—I have said it several times; I will say it again—the indictment itself, even though it is lengthy, it is not evidence of what it says. You will have to find evidence if it exists from the testimony and the exhib-

its and the stipulations. You can't find any evidentiary matters in here. This is a guide to follow to see if the charges in here have been satisfied by the Government by convincing you beyond a reasonable doubt that the events that they have outlined in either count existed. So I repeat. to you even though you are reading it and examining it and it is factual, it is not evidence.

N.T. 5–55.

### 4. *Order of closing arguments.*

 Smith contends that the order of closing arguments was improper since the Government was permitted rebuttal argument despite the fact that he elected not to present any defense. Prior to September 16, 1975, Local Criminal Rule 13(a) of the United States District Court for the Eastern District of Pennsylvania provided that, if the defense produced no evidence, it was entitled to make last argument to the jury. However, on September 16, 1975, the Board of Judges for this district repealed Local Rule 13 in view of an amendment to the Federal Rules of Criminal Procedure which was to become effective on December 1, 1975. That amendment is now embodied in Fed.R.Crim.P. 29.1, which states: "After the closing of evidence the prosecution shall open the argument. The defense shall be permitted to reply. The prosecution shall then be permitted to reply in rebuttal." Even though Rule 29.1 did not become effective until this trial was over, this Court decided that it would apply that Rule during the period between September 16, 1975, and December 1, 1975. Smith's counsel was so informed at the close of the Government's case on Friday, October 31, 1975, of the new sequence of closing arguments and was, as Smith's counsel with commendable candor concedes,[6] given an opportunity to put Smith on the stand, as well as to present other evidence. Accordingly, the Court holds that Smith had adequate notice of the sequence of closing arguments and that he was not in any way prejudiced by that sequence.

An appropriate Order will be entered.

---

**6.** The fact that Smith's counsel was notified that the Government would be given rebuttal time on Friday the 31st is not contained in the record. Counsel did relate to the Court at oral argument on the post-trial motions that he was so informed and that he was not trapped or hindered in presenting the case.