**UNITED STATES of America**

v.

**Bert GIGLI.**

**Crim. No. 82-174.**

United States District Court,
W.D. Pennsylvania.

Jan. 27, 1984.

See also D.C., 573 F.Supp. 1408.

Timothy Lewis, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Stephen Israel, Marianna Specter, Pittsburgh, Pa., for defendant.

## 940

### OPINION

SIMMONS, District Judge.

#### I.

On October 19, 1982, a three count indictment was filed charging Defendants Bert Gigli and Edward Gigli with violations of 18 U.S.C. §§ 371, 152 and 2. On October 20, 1983, the indictment against Defendant Edward Gigli was dismissed with prejudice, due to the death of Defendant Edward Gigli. Trial as to Defendant Bert Gigli commenced October 27, 1983, and on November 17, 1983, the jury returned a verdict finding Defendant Bert Gigli guilty as charged on all three counts of the indictment. Defendant filed post trial motions on November 23, 1983, which included a Motion in Arrest of Judgment; Motion for Judgment of Acquittal; and a Motion for New Trial. After receiving the response of the government and the briefs of the parties, the Court held oral argument on the post trial motions on December 16, 1983, and the decision on these motions is the subject of this Opinion.

The essence of the Motion in Arrest of Judgment and Motion for Judgment of Acquittal is that the indictment does not state facts sufficient to constitute an offense against the United States under the present Bankruptcy Code, since the prior Bankruptcy Act is alleged to be the applicable statute. The basis for the Motion for a New Trial is that the Court erroneously denied Defendant's Motion for Judgment of Acquittal; the verdict is contrary to the weight of the evidence and is not supported by substantial evidence; and that the Court prejudiced Defendant and deprived him of a fair trial by aiding the attorney for the government and judicially interfering with the trial of the Defendant.

#### II.

This case concerning the fraudulent transfer and/or concealment of the assets of a bankrupt estate, such estate being Union Forge, Inc., presents a complicated situation wherein factual and legal issues are closely intertwined. The Court has endeavored to set forth the history and background of this case in a clear and concise manner. The Court also points out that an early resolution of the issues in this case was not possible, since the controlling issue in this case did not come to the attention of the Court or the parties until after the jury began its deliberations.

On September 28, 1979, Union Forge, Inc., filed for voluntary bankruptcy under Chapter 11. On or about September 24, 1981, Union Forge was placed in involuntry bankruptcy under Chapter 7.

On November 6, 1978, Public Law 95–598, 92 Stat. 2549 was enacted, which provided in part that "The law relating to bankruptcy is codified and enacted as title 11 of the United States Code, entitled 'Bankruptcy', and may be cited as 11 U.S.C. § _____,". Prior to the enactment of Public Law 95–598, there was no Bankruptcy Code as such, rather the Bankruptcy Act (former 11 U.S.C. §§ 1 et seq.) was in effect. Although Public Law 95–598 was enacted in 1978, Section 402 of that Public Law further provided:

(a) Except as otherwise provided in this title, this Act shall take effect on *October 1, 1979.*

(Emphasis added).

Section 403 of Public Law 95–598 further provides:

(a) A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter or proceeding as if the Act [P.L. 95–598] had not been enacted. 92 Stat. 2683.

As was noted previously, Union Forge filed for voluntary bankruptcy on September 28, 1979, just a few days prior to the October 1, 1979 effective date of the new Bankruptcy Code. Thus at all times the Union Forge bankruptcy was controlled by

the previous "Bankruptcy Act" rather than the newly enacted "Bankruptcy Code."

It is also significant that the Defendant Bert Gigli, the President and owner of Union Forge, Inc. was continued as a debtor in possession of Union Forge. Under the prior Bankruptcy Act, which is clearly applicable to the situation presented in this case, the duties of a debtor in possession are set forth:

§ 588. Debtor in possession: title, rights, duties, and powers

A debtor continued in possession of its property shall have all the title, be vested with all the rights, be subject to all the duties, and *exercise all the powers of a trustee appointed under this chapter,* subject, however, at all times to the control of the judge and to such limitations, restrictions, terms, and conditions as the judge may from time to time prescribe.

Text of 11 U.S.C. § 588 (repealed) (Emphasis Added).

The powers of a trustee are defined as follows:

§ 587. Rights, powers, and duties of trustee

Where not inconsistent with the provisions of this chapter, a trustee, upon his appointment and qualification, shall be vested with the same rights, be subject to the same duties, and exercise the same powers as a trustee appointed under section 72 of this title, and, if authorized by the judge, shall have and may exercise such additional rights and powers as a receiver in equity would have if appointed by a court of the United States for the property of the debtor.

Text of 11 U.S.C. § 587 (repealed).

The duties of a trustee appointed under section 72 are defined as follows in section 75:

§ 75. Trustees; duties

(a) Trustees shall (1) collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estates as expeditiously as is compatible with the best interests of the parties in interest; (2) deposit all money received by them in designated depositories initial-

ly in demand deposits; and subsequently, if authorized by the court, in interest-bearing savings deposits, time certificates of deposit, or time deposits—open account; (3) account for and pay over to the estates under their control all interests received by them upon funds belonging to such estates; (4) disburse money only by check or draft on such depositories; (5) keep records and accounts showing all amounts and items of property received and from what sources, all amounts expended and for what purposes and all items of property disposed of; (6) set apart the bankrupts' exemptions allowed by law, if claimed, and report the items and estimated value thereof to the courts as soon as practicable after their appointment; (7) examine the bankrupts (a) at the first meetings of creditors or at other meetings specifically fixed for that purpose, unless they shall already have been fully examined by the referees, receivers, or creditors, and (b) upon the hearing of objections, if any, to their discharges, unless otherwise ordered by the court; (8) examine all proofs of claim and object to the allowance of such claims as may be improper; (9) oppose at the expense of estates the discharges of bankrupts when they deem it advisable to do so; (10) furnish such information concerning the estates of which they are trustees and their administration as may be requested by parties in interest; (11) pay dividends within ten days after they are declared by the referees; (12) report to the courts in writing the condition of the estates, the amounts of money on hand, and such other details as may be required by the courts, within the first month after their appointment and every two months thereafter, unless otherwise ordered by the courts; (13) make final reports and file final accounts with the courts fifteen days before the days fixed for the final meetings of the creditors; and (14) lay before the final meetings of the creditors detailed statements of the administration of the estates.

Text of 11 U.S.C. § 75 (repealed).

Finally, the operation of business is authorized in section 589:

§ 589. Operation of business and management of property; reports

A trustee or debtor in possession, upon authorization by the judge, shall operate the business and manage the property of the debtor during such period, limited or indefinite, as the judge may from time to time fix, and during such operation or management shall file reports thereof with the court at such intervals as the court may designate.

Text of 11 U.S.C. § 589 (repealed).

Under the new Bankruptcy Code, which is *not* applicable in this matter, the powers of a debtor in possession are set forth:

§ 1107. Rights, powers, and duties of debtor in possession

(a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation . . ., and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107 (Public Law 95–598. November 6, 1978).

Section 1108 of the Bankruptcy Code provides that the trustee may operate the debtor's business.

Under section 1106 of the new Bankruptcy Code, the duties of the trustee are set forth:

§ 1106. Duties of trustee and examiner

(a) A trustee shall—

(1) perform the duties of a trustee specified in sections 704(2), 704(4), 704(6), 704(7), and 704(8) of this title; . . . .

11 U.S.C. § 1106 (Public Law 95–598, November 6, 1978).

The duties of a trustee specified in section 1106 include:

§ 704. Duties of trustee

The trustee shall—

. . . . .

(2) be accountable for all property received;

. . . . .

(4) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

. . . . .

(6) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;

(7) if the business of the debtor is authorized to be operated, file with the Court and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the court requires; and

(8) make a final report and file a final account of the administration of the estate with the court.

11 U.S.C. § 704 (Public Law 95–598, November 6, 1978).

The substantive powers and duties of a debtor in possession under the repealed act are broader than the duties specified in Public Law 95–598, and include the power to collect and reduce to money the property of the estates, and the debtor in possession under the repealed act may also exercise the additional rights and powers as a receiver in equity. (Compare repealed §§ 75 and 587 with new §§ 1106, 1107 and 704).

III.

The indictment charges in Count One "the defendants, BERT GIGLI and EDWARD GIGLI, did conspire, confederate, and agree together with each other and others known and unknown to the grand jury to commit offenses against the United States, to wit, to knowingly and fraudulently transfer and conceal property of Union Forge, Inc. with intent to defeat the provisions of Title 11 of the United States Bankruptcy Code."

Count Two of the indictment, charging a violation of Title 18, United States Code,

Sections 152 and 2, states in support thereof:

(2) On or about September 24, 1981 and continuing thereafter to on or about June 3, 1982, in the Western District of Pennsylvania and elsewhere, the defendants, EDWARD GIGLI and BERT GIGLI, knowingly, wilfully and fraudulently did transfer and conceal property of Union Forge, to wit, certain machinery and equipment, with the intent to *defeat the provisions of Title 11 of the United States Bankruptcy Code.*

(Emphasis Added).

Likewise, Count Three of the indictment charging a violation of Title 18, United States Code, Sections 152 and 2, states in support thereof:

(2) From on or about June 1, 1981 and continuing thereafter to at least October 1, 1981, in the Western District of Pennsylvania, the defendant, BERT GIGLI, knowingly, wilfully and fraudulently did transfer and conceal property of Union Forge, to wit, the sum of approximately $100,000 with the *intent to defeat the provisions of Title 11 of the United States Bankruptcy Code.*

(Emphasis added).

Turning to 18 U.S.C. § 152, the statute which is the basis for this indictment, the statute reads:

Whoever, either individually or as an agent or officer of any person or corporation, in contemplation of a case under title 11 by or against him or any other person or corporation, or with intent to defeat the provisions of title 11, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation; ...

18 U.S.C. § 152, as amended Act of November 6, 1978, P.L. 95–598, Title III, § 314(a), (c), 92 Stat. 2676.

The prior 18 U.S.C. § 152 read as follows: Whoever, either individually or as an agent or officer of any person or corporation, in contemplation of a *bankruptcy proceeding* by or against him or any other person or corporation, or with intent to defeat' the *bankruptcy law,* knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation; ...

18 U.S.C. § 152, June 25, 1948, ch. 642, § 1, 62 Stat. 689; June 12, 1960, P.L. 86–519, § 2, 74 Stat. 217; September 2, 1960, P.L. 86–701, 74 Stat. 753; October 18, 1976, P.L. 94–550, § 4, 90 Stat. 2535.

The United States Code Service (Lawyers Edition, Lawyers Co-Operative Publishing Co.), includes the following explanation under the wording of this former statute:

HISTORY; ANCILLARY LAWS AND DIRECTIVES

References in text;

"The Bankruptcy law", referred to in this section, is Act July 1, 1898, ch 541, 30 Stat. 544, ...

It is apparent to the Court that the indictment alleges a violation under the amended 18 U.S.C. § 152 rather than the repealed 18 U.S.C. § 152. However, because the bankruptcy proceeding under Chapter 11 was filed on September 28, 1979, just days before the new Bankruptcy Code was to go into effect, the former Bankruptcy Act (now repealed), is applicable to this case as mandated by Congress in Section 402 of Public Law 95–598. The rights, duties, obligations and procedures under the former Bankruptcy Act apply to the Union Forge bankruptcy proceeding, and not the rights, duties, obligations and procedures as set forth in the new Bankruptcy Code. The indictment purports to charge the Defendant Bert Gigli with defeating the provisions of the Bankruptcy Code, but by the clear and express determination of Congressional intent contained in Section 402 of Public Law 95–598, this Bankruptcy Code, with the corresponding rights, duties, obligations and procedures, is expressly made inapplicable to all proceedings involving this Union Forge bankruptcy.

Consequently, it further appears to this Court that an indictment charging the Defendant Bert Gigli with a criminal offense of "acting with the intent to defeat the provisions of *Title 11 of the United States*

*Bankruptcy Code*" does not and cannot charge an offense against the Defendant Bert Gigli, because Congress specifically exempted the Union Forge bankruptcy proceedings which were instituted prior to the effective date of the new Code, from the provisions of that United States Bankruptcy Code. Any law which retrospectively changes the legal consequences of an act is forbidden. To hold the Defendant Bert Gigli criminally responsible under the standards of the new Bankruptcy Code, which is expressly inapplicable to the bankruptcy proceeding involved herein because it was instituted prior to the effective date of the new Code, has the effect of an ex post facto law.

The Government submits that any errors in the indictment are mere procedural errors in statutory citation which cannot invalidate the indictment under Fed.R. Crim.P. 7(c)(3) since no prejudice accrues to the Defendant. The Government further contends that the Defendant is not charged with violating the Bankruptcy Act or Bankruptcy Code, but with violating Title 18, United States Code, Section 152.

This Court believes, however, that the distinction between the former Bankruptcy Act and the new Bankruptcy Code, and the distinction between the repealed 18 U.S.C. § 152 and the amended 18 U.S.C. § 152, is crucial and highly significant. First, as previously pointed out in this Opinion, there are substantial differences in the duties and powers of a debtor in possession under the former Act and the new Code. The former Act allowed debtors in possession a broad range of powers and duties, while the new Code represents a narrowing of said duties. The Defendant could not have violated the provisions of the Bankruptcy Code, nor could he have acted with intent to defeat the provisions of the new Bankruptcy Code since the law was not in effect with respect to the Union Forge bankruptcy proceedings, since said proceedings were instituted prior to the effective date of the new Bankruptcy Code.

Further, this Court believes that it is of paramount importance to distinguish an indictment under the amended 18 U.S.C. § 152 from an indictment under the former 18 U.S.C. § 152. Congress clearly felt that there should be a distinction between criminal indictments which charged intent to defeat bankruptcy proceedings brought under the former act, and with indictments which charge the intent to defeat a bankruptcy case brought under the new Title 11. The provisions of Public Law 95–598, November 6, 1978, Title IV, § 403(d) contain a savings provision which states "The amendments made by section 314 of this Act do not affect the application of Chapter 9, Chapter 96, section 2516, section 3057, or section 3284 of title 18 of the United States Code [18 U.S.C. §§ 151 et seq., §§ 1961 et seq., § 2516, § 3057, or § 3284] to any act of any person—

(1) committed before October 1, 1979; or

(2) committed after October 1, 1979, *in connection with a case commenced before such date.*"

The above section (2) clearly evidences the congressional intent that criminal indictments in cases arising under the former Bankruptcy Act be brought under the former 18 U.S.C. § 152, and not the amended 18 U.S.C. § 152. As heretofore stated previously, it is uncontested and beyond any doubt that it is the prior bankruptcy Act and not the new Bankruptcy Code which is applicable to the instant bankruptcy proceeding, which was instituted just days prior to the October 1, 1979 effective date of the Bankruptcy Code.

The indictment does not state facts sufficient to constitute an offense against the United States, as the Bankruptcy Code is not applicable to the Defendant in the above-captioned case. Congress has specifically indicated its intent that indictments such as the one in this matter be brought under the former 18 U.S.C. § 152 by adding the savings provision to the relevant legislation.

It is important to point out that the problems with this indictment did not come to the attention of the Court until after the jury had begun its deliberations, and then

the problem only came to the attention of the Court in response to a written question submitted by the jurors regarding the powers and duties of a debtor in possession. It is also well to note that the United States Code Annotated, published by West Publishing Company, does not contain the provisions of the savings provisions in its presentation of the amended 18 U.S.C. § 152. However, the savings provision is contained in the official Statutes at Large, and in the commentary following 18 U.S.C. § 151 of the Lawyers Co-Operative Edition. This Court can comprehend how the indicting United States Attorney (who was not the Trial Attorney), may not have been aware of the existence of said savings provision, but the savings provision is contained in the official version of the legislation, which is the version which is controlling. In light of the language of the savings provision, this Court must grant Defendant's Motion in Arrest of Judgment, since the indictment charges the Defendant with a crime which he could not have committed as he was never bound by the provisions of the new Bankruptcy Code. A motion for arrest of judgment is the proper mode of raising the contention that the indictment does not charge an offense. *United States v. Smith,* 410 F.Supp. 1256 (E.D.Pa.1976); *United States v. Hudson,* 422 F.Supp. 395, aff'd *Appeal of Hudson,* 556 F.2d 566 (3rd Cir. 1977), aff'd 556 F.2d 569 (3rd Cir.1977), *cert. denied,* 431 U.S. 922, 97 S.Ct. 2194, 53 L.Ed.2d 236.

## IV. Motion for New Trial

Defendant contends that he was substantially prejudiced and deprived of a fair trial because the Court aided the attorney for the government by providing guidance as to what evidence the government should have introduced and by giving "hints" to the government attorney to help him prove his case.

■ Under Rule 33 of the Fed.R.Crim.P., the Court may grant a new trial if required in the interest of justice. It is only when the Court reaches the conclusion that there has been a miscarriage of justice that a new trial should be granted.

■ After careful consideration and review of all of the facts of this case, the Court is unable to conclude that it committed any error with respect to any statements the Court made in the course of the trial of this case. The question of ownership of certain property, and proof of that ownership, was an essential aspect of this case. At sidebar, and out of the hearing of the jury, the Court cautioned the attorney for the Government that in the opinion of the Court, the evidence presently on the record did not establish ownership of said property. It was necessary for the Court to make this statement to the attorney for the Government, since a witness had made reference to certain missing equipment. Because the Court felt that no proof of ownership of the missing equipment had yet been established, the Court was obliged to bring this fact to the attention of the United States Attorney, since the likelihood existed that the jury would unfairly assume that the missing equipment was the property of the bankrupt estate, Union Forge, Inc. This was not a "hint" to the attorney for the government, but was done to protect the Defendant from the unfair inference, at that stage in the proceedings, that the missing equipment was the property of the bankrupt estate.

Further, at this point in the proceedings, the government was not prepared to rest its case. The Court had no way of determining what additional witnesses the government would call, and indeed the Court had no control over which witnesses the Government would call in the future. The government attorney never solicited the advice and/or approval of the Court as to which witnesses it should present, and the Court would not have given such advice and/or approval had the same been solicited.

The Court can find no evidence that the jury was prejudiced, mislead or influenced in any manner by any conduct of this Court. At all times this Court endeavored to be fair and just to both the Defendant and the Government. Defendant's motion for a new trial is meritless, and will therefore be denied. The Court is further convinced

that the jury verdict is supported by substantial evidence.

The Motion for Judgment of Acquittal is moot in light of the reasoning previously set forth hereinabove in this Opinion.

An appropriate Order will be entered.