**UNITED STATES of America**

v.

**Robert G. BLAIR, Appellant.**

**No. 19452.**

United States Court of Appeals, Third Circuit.

Argued Jan. 5, 1972.

Decided Feb. 23, 1972.

William J. Brady, Jr., Philadelphia, Pa., for appellant.

Victor L. Schwartz, Asst. U. S. Atty., Philadelphia, Pa. (Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before KALODNER, GANEY* and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

This is an appeal from a judgment of conviction in the District Court for the Eastern District of Pennsylvania for causing altered securities to be transported in interstate commerce in violation of 18 U.S.C. § 2314 (1970).[1]

Appellant raises three main contentions on appeal: (1) there was insufficient evidence for the case to go to the jury on the theory that he was the principal who caused the Western Union money orders to be transported in interstate commerce; (2) there was prejudicial admission of hearsay testimony; and (3) the district judge's charge was confusing, inaccurate, and prejudicial.

We shall deal with the issues in that order.

### (1) THE SUFFICIENCY OF THE EVIDENCE

Shur Kleen Co., Inc. was a small store located on West Allegheny Avenue, Philadelphia, Pa., containing three or four racks of clothing. Its manager identified himself as "Buddy Blair." On August 12, 1969, a checking account was opened in the name of the company with an initial deposit of $350. The signature card for the account specified the precise Allegheny Avenue address,

---

* Judge Ganey participated in the argument and disposition of this case but died before this opinion was filed.

1. 18 U.S.C. § 2314 (1970) reads in part: "Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited . . . . ."

This paragraph does not specifically include "causing to be transported," as does the second paragraph of the section. Notwithstanding the difference, it has been held that it is sufficient if the defendant causes the securities to be transported in interstate commerce. Pereira v. United States, 347 U.S. 1, 7–9, 74 S.Ct. 358, 98 L. Ed. 435 (1954), United States v. Ackerman, 393 F.2d 121, 122 (7th Cir. 1968).

named "Fred Blair" as company president and one of two persons authorized and required to sign checks on the account. The other person authorized to sign checks on the account was one Diane Sproul.

On November 18, twice on November 24 and once on November 28, 1969, Western Union money orders[2] were deposited to the Shur Kleen Company account with the Girard Trust Bank. The orders were originally made out in the amounts of $10.00, $10.10, $10.05 and $20.00, but it was shown that each was raised to $20,000 prior to deposit. Three of the money orders were sent from 372 Central Park West in New York City. One was signed "Arthur Lang," one, "Jade, Inc.," and the third "Milton Elly." The fourth was sent from 3438 Central Avenue, Newark, New Jersey, although the sender was not identified. Three of the money orders included the following message: "Hope this payment brings all accounts up to date."

■ There was testimony that the money orders were received by Shur Kleen without having been altered, so that the change in the stated values would have had to occur between the delivery to Shur Kleen and the deposit at the bank. Once Girard accepted these money orders, it shipped them to the paying bank in New York City, creating the interstate transportation required by 18 U.S.C. § 2314. There is no proof as to who deposited the altered money orders, although appellant's fingerprint was on one of them.

There is a great deal of proof that appellant Blair began drawing large checks shortly after the deposits began. On November 21st, three days after the first money order was deposited, Blair went to the bank to inquire about how he could prepare a payroll for his business. Between November 21st and 28th, appellant withdrew large sums from the Shur Kleen account. These withdrawal checks were for $8,000, $9,000, $4,000, $10,000, $10,000, $20,000, and $6,000. Several of the checks were payable to the order of Girard Trust Company with receipts on the reverse side by Fred Blair indicating that he received the cash, and at least two included notations that they were for Shur Kleen's payroll. A treasurer's check on the bank for $10,000 was issued to the order of Fred Blair and paid by Girard Trust Company on the endorsement of "Fred Blair." The Western Union orders were drawn on the Chase Manhattan Bank in New York City. It discovered the alterations and refused payment.

Appellant contends that the evidence was insufficient to go to the jury; that at best the judge should have given a charge on aiding and abetting under 18 U.S.C. § 2 (1970).

■ On reviewing the motion for acquittal, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government." Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); United States v. Provenzano, 334 F.2d 678, 683–684 (3d Cir.), cert. denied 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964). The evidence need not exclude every other hypothesis interpreting the facts introduced at trial, provided that they do establish a case from which the jury can find the defendant guilty beyond a reasonable doubt. United States v. Boyle, 402 F.2d 757 (3d Cir. 1968), cert. denied 394 U.S. 934, 89 S.Ct. 1207, 22 L.Ed.2d 464 (1969); United States v. Giuliano, 263 F.2d 582, 584 (3d Cir. 1959).[3]

---

2. The money orders were apparently made out to Shur Kleen Company or Shur Klein Co. The misspelling is not material here.

3. This test was adopted in United States v. Allard, 240 F.2d 840 (3d Cir. 1957), after the Supreme Court's decision in

Holland v. United States, 348 U.S. 121, 135–136, 75 S.Ct. 127, 99 L.Ed. 150 (1954) called into question any further reliance on our earlier test announced in United States v. Russo, 123 F.2d 420, 423 (3d Cir. 1941), that the "directly proven circumstances be such as to exclude every reasonable hypothesis but that of guilt."

In this case, the evidence, particularly when viewed in the light most favorable to the Government, presents an overwhelming case that the appellant is guilty beyond a reasonable doubt. The only piece missing is evidence that the appellant personally deposited the money orders at the Girard Bank. The question then becomes whether such actions can be inferred, and the circumstantial evidence strongly supports such inference. Blair was president of the company to which the money orders were sent, and he was one of the two people on the bank's signature card. His fingerprint was on one of the money orders. Three days after the first of the orders was deposited, he personally visited the bank and inquired about how to withdraw cash for payrolls. On the same day, and throughout the following week, he withdrew several large checks, some of which were marked for payrolls. However, as already indicated, Shur Kleen was a small store with very little in it.

■ Such circumstantial evidence would permit a finding that Blair was the principal involved in the bank transactions and that he carefully laid the plan to perpetrate the fraud on the bank. Were we to look upon this evidence charitably in favor of the appellant, it nonetheless leads to the conclusion that he was an aider and abettor. Such a distinction will not aid the appellant because proof of aiding and abetting will sustain an indictment charging the substantive offense. United States v. Heithaus, 377 F.2d 484, 485 n. 1 (3d Cir. 1967); United States v. Provenzano, supra, 334 F.2d at 690.

### (2) HEARSAY TESTIMONY

FBI agent Berry testified at the trial that he had gone to 372 Central Park West, New York City, and determined that none of the alleged senders of the money orders lived at that address. The defense made an objection, contending that the "determination" was hearsay. Appellant contends that either tenants or the manager of the building should have been brought in to testify.

■ In spite of the Government's efforts to characterize the testimony as a determination made independently by the agent, Berry was merely repeating statements made by others about events not within his personal knowledge. The testimony was therefore hearsay. Paschal v. United States, 306 F.2d 398, 401–402 (5th Cir. 1962). There was competent evidence however, that the address of the sender of the fourth money order, 3438 Central Avenue, Newark, New Jersey, was wholly fictitious. While the admission of the hearsay was error, we find that it was harmless. Cf. Chambers v. Maroney, 399 U.S. 42, 53, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The indictment charged the defendant in the conjunctive with causing to be transported in interstate commerce a security which he knew was falsely made *and* altered. The statute involved, 18 U.S.C. § 2314, is in the disjunctive and requires only that the security be falsely made *or* altered.

■ Thus, the indictment charged more than the Government was required to prove to convict. The Government introduced overwhelming evidence showing that the money orders were altered. It adduced sufficient circumstantial evidence independent of the alleged hearsay to sustain a finding that the appellant knew of the alteration of all of the money orders.[4] The proof pertaining to the fictitious senders was only relevant to show false making. Had the indictment conformed to the statute, no proof of the

---

4. Appellant seems to urge that the trial judge confused the jury by interchanging the word "forgery" for the terms "false making and altering" that were charged in the indictment. This substitution was proper; forgery has been defined not only in terms of the falsity of execution of the document but also as its material alteration. Carr v. United States, 278 F.2d 702, 703 (6th Cir. 1960); Rowley v. United States, 191 F.2d 949, 950 (8th Cir., 1951).

false making would have been necessary to convict. The inclusion of the second prohibited act is of no consequence because proof of either will sustain the conviction. Crain v. United States, 162 U.S. 625, 635, 16 S.Ct. 952, 40 L.Ed. 1097 (1896); United States v. Conti, 361 F.2d 153, 158 (2d Cir. 1966). Under these circumstances, the hearsay evidence was harmless.

### (3) THE CHARGE TO THE JURY

Appellant raises several questions regarding the propriety of the district court's charge. Although the instructions to the jury may have been disjointed and may have lacked artistic formulation, none of the issues presented involve prejudicial error.

 Early in the charge, the trial judge commented:

> The charge there is that Mr. Blair did cause an altered security to be transported, and I don't want to comment on it, *but I can't avoid saying that the money orders in question were altered.* Now, you may find that they were not, I don't know, that is your province, but if you do find that they were altered and they were transported, then if it was done knowingly, with intent to defraud, *that is a criminal act.* (emphasis ours)

Trial counsel objected that the statement emphasized above usurped the role of the jury as the finder of fact. We need not decide whether it was prejudicial because we believe that the cautionary comment immediately thereafter corrected the error, if any. Moreover, the trial judge went further in assuring that the jurors understood it was their prerogative to find or not to find that the money orders were altered. After a side bar conference at which time counsel objected to the statement, the judge cautioned the jury:

> Members of the jury, you will recall that earlier in my charge I stated that in my opinion these money orders were altered. Now, if you think they were not, you use your own judgment, because yours prevails, not mine. In other words, that is one of the facts you must determine: Were they altered? I said I thought they were, but no matter what I think, it is what you think that prevails.

 Above and beyond the foregoing disclaimers, a federal district judge has the privilege of fairly commenting on the evidence, Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L. Ed. 1321 (1933); Patton v. United States, 281 U.S. 276, 288, 50 S.Ct. 253, 74 L.Ed. 854 (1930). He may also express his opinion upon the facts so long as "he makes it clear to the jury that all matters of fact are submitted to their determination." Quercia v. United States, supra, 289 U.S. at 469, 53 S.Ct. at 699. This comment of the trial judge was within the limits of judicial discretion.

 Appellant also contends that it was improper for the judge to comment upon his counsel's statement in his closing remarks to the jury. Counsel argued that the failure of the Government to call the tellers from the Girard Bank created a reasonable doubt that the defendant had not in fact deposited the checks. The judge said:

> It was argued to you—and it is a proper argument to make—that this witness didn't appear and that witness didn't appear. *I think every witness the government could or should produce did appear, personally,* and if you believe that Mr. Blair knew that these were altered certificates and that he took them to the bank in Philadelphia with the fraudulent intent, knowingly and wilfully, as I have said, to collect on them either through a deposit or directly or any other way, and that by his doing that they went through banking channels from Philadelphia to New York, why then he can be found guilty, it you so find that beyond a reasonable doubt. (emphasis ours)

Appellant contends that this statement destroyed the trial judge's impartiality and made him an advocate of the Government's cause. Besides specifically

**520**

noting that the argument was a proper one for the defense to make, the judge again removed no material element from the case. Our reading of the instruction leaves us satisfied that the issue of the doubt created by the lack of evidence from the tellers was still before the jury, and that the comment was not beyond judicial discretion. United States v. Kravitz, 281 F.2d 581, 584 (3d Cir. 1960), cert. denied 364 U.S. 941, 81 S.Ct. 459, 5 L.Ed.2d 372 (1961).

■■■■ Additionally, appellant contends that the district court failed to give several instructions requested. Three of the requested instructions, numbers five, six and ten, dealt with the material elements of the crime. The trial judge gave adequate instructions on each point, but did not follow the language outlined by defense counsel. It is well settled that there is no error to refuse to instruct as counsel wishes if the charge to the jury is correct. United States v. Grunewald, 233 F.2d 556, 569 (2d Cir. 1956), rev'd on other grounds, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). *See also*, United States v. Sacco, 436 F. 2d 780, 783 (2d Cir. 1971); United States v. Alker, 260 F.2d 135, 152 (3d Cir. 1958), cert. denied 359 U.S. 906, 79 S.Ct. 579, 3 L.Ed.2d 571 (1959).

The judge refused to charge on two other submitted instructions, numbers eight and nine, which dealt with defense theories. Instruction eight would have had the jury consider the withdrawal of $67,000 over a week's time from the Shur Kleen account rather than the full $80,000 at once as sufficient evidence that the scheme was not fraudulent. Instruction nine would have charged that even if the defendant had knowledge of the offense, that knowledge alone would not satisfy the requirement that the Government prove that the defendant transported or caused the transportation of the altered money orders.

■■■■ These two requests presented a difficult problem for the judge. He was bound to give the substance of a requested instruction relating to any defense theory for which there was any foundation in the evidence. *cf.* Strauss v. United States, 376 F.2d 416, 419 (5th Cir. 1967). He also had to avoid diverting the jury by idle speculation and frivolous considerations. A confused jury can give as improper a verdict as one which has failed to receive some significant instruction. Therefore, the charge should direct and focus the jury's attention on the evidence given at trial, Williams v. United States, 76 U.S.App. D.C. 299, 131 F.2d 21, 23 (1942), not on far fetched and irrelated ideas that do not sustain a defense to the charges involved. In this case, neither instruction requested stated legally cognizable and valid defenses.[5] At best, instruction nine was a statement of the obvious fact that the jury had to find something more than mere knowledge of the alterations to convict. The judge so charged. Instruction eight grasped at straws and bordered on the frivolous.

We have examined the appellant's remaining contentions pertaining to the charge and find no merit in them.

The judgment of the district court will be affirmed.

---

5. E. g., in Strauss v. United States, 376 F.2d 416 (5th Cir. 1967), the requested charge that was not made involved a theory with some basis in the record that would have been a complete defense to the prosecution. The Ninth Circuit in Pratti v. United States, 389 F.2d 660 (1968), found that failure to charge as requested on the Government's burden of proof with regard to the defense of entrapment was error. Such cases involve material elements of the defense's arguments, and failure to charge on these points would amount to undermining the jury's ability to find the defense on these points. Neither instruction in our case is such a material element.