NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1293
_____

UNITED STATES OF AMERICA

v.

FRIDAY JAMES,

Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 2-12-cr-00106-001)
District Judge: Honorable Norma L. Shapiro
_____

Submitted Under Third Circuit LAR 34.1(a)
January 13, 2015

Before: AMBRO, FUENTES, and ROTH, Circuit Judges

(Opinion filed:  October 20, 2015)
_____

OPINION[*]
_____

AMBRO, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Friday O. James appeals his conviction of and sentence for 26 counts of aiding in the preparation of materially false tax returns or related documents. 26 U.S.C. § 7206(2). We affirm.

## I.    Facts

James ran Frika Tax Services, a tax preparation business in Philadelphia. Before opening his own business, he had worked for H&R Block and Liberty Tax Services, where he had been a tax preparer and had received training in assisting others with their federal income taxes. In 2008 and 2009, he signed about 2,000 tax returns, 26 of which, a jury found, he had prepared or assisted in preparing with materially false statements. In short, James claimed on behalf of his clients excessive deductions for meals and business travel and he claimed the First-Time Homebuyer Credit—a valuable tax benefit available to, as the name implies, those who have bought a home for the first time within a certain time frame—for a handful of clients who did not qualify for it.

## II.    Discussion

James argues that he misunderstood the nature of the First-Time Homebuyer Credit and thus did not wilfully violate the tax laws; that several of his clients were entitled to deduct purported business expenses that James claimed on their behalf; that the Government failed to prove that James himself prepared the returns that contained false statements; that the Court erred in its jury charge by commenting on the argument of James's counsel and by referring to uncharged conduct; and that he must be resentenced. James makes generalized attacks against the Government's case; he does

2

not explain one-by-one why he believes each conviction must fall, and we take the same approach.

A.     *First-Time Homebuyer Credit*

Thirteen of the counts of conviction include a false Form 5405, the document by which a taxpayer claims the Homebuyer Credit. James argues on appeal (as he did at trial) that he believed anyone who had purchased a home before the deadline for the relevant tax year "or [was] considering buying a home" could claim the credit. App. Br. 12–13. In James's view, if a recipient of the credit failed to buy a home, he could repay the credit (with thanks to the Government for the interest-free loan). In fact, only those who have bought or contracted to buy a first home are eligible. 26 U.S.C § 36(h)(1)–(2). As ignorance of the law is a defense to criminal tax violations, *Cheek v. United States*, 498 U.S. 192, 199–200 (1991), James argues that his misunderstanding of the Internal Revenue Code precludes a conviction here.

Although it is theoretically possible that James misunderstood the operation of the Homebuyer Credit, other inferences from the evidence are plausible (and that carries the day, as on appeal of a conviction we review the evidence in the light most favorable to the Government). Form 5405, which was attached to the tax returns that claimed the credit, requires the taxpayer (or preparer) to list the "[a]ddress of home qualifying for the credit" and the "[d]ate acquired" and states in the instructions that people may claim the credit only if they "purchased [their] main home located in the United States after April 8, 2008, and before December 1, 2009." IRS Form 5405, 1 (Rev. Feb. 2009). One witness testified that James told them they could claim the credit simply by entering *any*

3

address in the field for the qualifying home, *see* Supp. App. 201:2–22 (testimony of Barry Thompson) ("[H]e told me to make up an address."), another that the date listed was false (because she never acquired the house), *id.* at 346:25–347:3 (Rebecca Varney). Others testified that James claimed the "*First-Time* Homebuyer Credit" for them despite their already owning a home. *Id.* at 224:2–3 (testimony of Jacob McCarthy that he had owned a home since 2000 but that James told him to claim the credit anyway); *id.* at 464:12–17 (testimony of Edward Jones that he already owned a home and did not purchase a home at the address listed on his Form 5405).

Given James's years of experience as a tax preparer, which included training from two widely used national tax preparation companies, a reasonable juror could have concluded that James would have read and understood the form's instructions. And, even without regard to his purported understanding of the credit, the evidence supports the conclusion that he wilfully entered materially false information, as when he encouraged Barry Thompson to make up an address and when he entered in a "[d]ate acquired" for the house Rebecca Varney never bought. James does not argue that he was unaware that it is a crime to enter false facts into a tax document, and thus his argument that the Government failed to prove he had the required intent falls short.

### B. *Meals and Travel Expenses*

James's business expense deductions fare no better. The Internal Revenue Code allows employees—those who are not self-employed—to take limited deductions for unreimbursed business expenses, such as transportation between jobs and meals. James argues that many of his clients paid these expenses with money that was not reimbursed

4

and that he prepared their returns to take proper deductions. But the possible existence of some reimbursable expenses does not override the illegal deductions he took. For example, Jallah Buku's tax return claims $10,936 in unreimbursed business expenses, including thousands claimed for driving and meals; he testified that he had not spent that amount of money and did not even know it was on his return. Supp. App. 296:5–11. A reasonable juror could have concluded that James, who prepared the return, made up a large number to claim a large refund, and thus his argument that he only claimed allowable business expenses must fail.

### C. Identity

James's contention that the Government failed to prove "identity"—*i.e.*, that it was James himself who filled out the relevant tax forms—likewise cannot upset his conviction. For example, Edward Jones testified that a "kid" (Jones could not remember his name) prepared Jones's 2008 or 2009 tax return. The kid was an employee of Frika, and James's preparer tax identification number (PTIN), a unique set of digits used as an electronic signature on tax forms, appeared on both of Jones's returns. The 2008 return falsely claimed the First-Time Homebuyer Credit and certain business expenses, while the 2009 return also claimed thousands in unreimbursed business expenses that Jones had never made. Given the substantial similarities between the tax returns allegedly filled out by James's employee and signed using James's PTIN and those undisputedly prepared by James himself, a reasonable juror could have concluded at least that James directed the material falsehoods to be entered into the former set of returns.

5

### D. Constructive Amendment

James also argues that the Court allowed the jury to convict him for activity not charged in the indictment. Several witnesses testified about falsehoods on their tax returns related to claimed deductions for charitable contributions and uniforms; however, James was charged only with falsifying claims for the First-Time Homebuyer Credit and deductions for travel and meals. The Court specifically instructed the jury *not* to consider possible violations other than the three kinds of activity charged in the indictment. Supp. App. 686:21–687:5 ("[Y]ou've heard testimony about charitable contributions and about uniforms and shoes, but the charges are with regard to three things . . . .") (listing unreimbursed travel and meal expenses and the Homebuyer Credit). James complains that this limiting instruction prejudiced him, but it in fact did the opposite by clarifying to the jury what they should consider and directing them that much damaging testimony was not relevant to the charged offenses.

### E. Comment on Counsel's Argument

Similarly, the Court appropriately instructed the jury on how to understand a statement of the law made by James's counsel in closing argument that differed from one given by the Court in its charge. James's lawyer argued to the jury that James had correctly understood the Homebuyer Credit to have been available to those who were contemplating buying a first home even if they never actually bought one. The District Court charged the jury that counsel had misstated the law and immediately added, "[B]ut that's not the issue." Supp App. 693:19. The Court then directed the jury's attention to the important issue in the case: "[Y]ou have to consider whether [James] misunderstood

6

the law and thought that he had the right to claim it for these people or whether he willfully claimed it to get the large refunds whether or not that was legally permissible." *Id.* at 693:22–694:1.

When considering whether a Court's remarks on argument are appropriate, we consider "the materiality of the comment, its emphatic or overbearing nature, the efficacy of any curative instruction, and the prejudicial effect of the comment in light of the jury instruction as a whole." *United States v. Olgin*, 745 F.2d 263, 268–69 (3d Cir. 1984). Here, there is no suggestion that the comment was material, and in fact the Court stated that any disagreement on the law between counsel and the Court was "not the issue." Supp. App. at 693:22. The Court's instruction was by no means disparaging or overbearing; it merely explained to the jury the District Judge disagreed with defense counsel's view of the law, a necessary clarification as defense counsel's closing argument endorsed James's take on the availability of the Homebuyer Credit. Nor can we discern any prejudicial effect from this necessary instruction in the middle of a lengthy charge. James thus fails to persuade us that the Court's comments require reversal.

### F.    Sentence

James's final challenge is that his sentence should be at most six months. He argues first that there was no tax loss in this case, meaning that his offense level should have been 6 rather than 24, and second that the District Court indicated a desire to depart downward from the Guidelines' range but nevertheless sentenced him to the statutory maximum. However, as the Government rightly points out, James conceded the amount of the attempted tax loss at his sentencing ($1.2 million), which led to an offense level of

7

24 and a Guidelines range of 51 to 63 months' imprisonment. Supp. App. 710:18–19.

His second argument fares no better. Although three years is the statutory maximum for *one* count of violating 26 U.S.C. § 7206, those sentences may run consecutively to one another, making the statutory maximum here 78 years for James's 26 counts of conviction. James's 36-month sentence was below the Guidelines' range and the statutory maximum, and James raises no persuasive argument that it should be reduced.

\*   \*   \*   \*   \*

We have considered James's remaining arguments and find them unpersuasive. The conviction and sentence were proper, and we thus affirm the judgment of the District Court.